# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WICHITA AND AFFILIATED TRIBES, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:25-cv-3235 Hon. Dabney L. Friedrich |
| v. | ) ) | |
| DOUG BURGUM, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

LEGAL STANDARDS ........................................................................................................12

ARGUMENT ......................................................................................................................13

    I.    Plaintiffs cannot state a claim for an accounting arising under the United States' general trust relationship with federally recognized Indian tribes ............14

    II.    Plaintiffs fail to state a claim for an accounting of the Indian boarding school system under the 1994 Act .........................................................19

        A.    Section 4044 does not require an accounting of Indian boarding school system ....................................................................................20

            1.    Plaintiffs fail to state an accounting claim based on section 4044's requirement that Interior submit a reconciliation report to Congress in 1996 ............................................................20

            2.    Section 4044 does not require the accounting Plaintiffs seek of the federal Indian boarding school system ...............................23

        B.    Section 4011 does not require an accounting of Indian boarding school system ....................................................................................25

        C.    Plaintiffs fail to state a claim under section 162a(d) ..................................30

    III.    Plaintiffs fail to state an APA claim related to Interior's investigative report .......31

        A.    Plaintiffs fail to state a claim under APA § 706(2) because the investigative report on the Indian boarding school system is not a final agency action ...................................................................................32

        B.    Plaintiffs fail to state a claim under APA § 706(1) ....................................34

CONCLUSION....................................................................................................................35

# TABLE OF AUTHORITIES

## Other Authorities

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011) ................................................................ 30

*Arizona v. Navajo Nation*,
  599 U.S. 555 (2023).................................................... 3, 15, 16, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................ 12

*Assiniboine and Sioux Tribe of the Fort Peck Indian Rsrv. v. Norton*,
  211 F. Supp. 2d 157 (D.D.C. 2002)................................................ 18

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015)......................................................... 12

*Bennett v. Spear*,
  520 U.S. 154 (1997)................................................................ 7, 32

*Cherokee Nation v. Dep't of Interior*,
  754 F. Supp. 3d 107 (D.D.C. 2024)..................................... passim

*Citizen Potawatomi Nation v. Salazar*,
  624 F. Supp. 2d 103 (D.D.C. 2009)................................................ 22

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
  846 F.3d 1235 (D.C. Cir. 2017)......................................................... 25

*Cobell v. Norton*,
  240 F.3d 1081 (D.C. Cir. 2001) ............................................ 6, 18, 27, 30

*Dalmar v. Blinken*,
  No. 23-cv-3315 (DLF), 2024 WL 3967289 (D.D.C. Aug. 26, 2024)..................... 25

*Doe 1 v. Apple Inc.*,
  96 F.4th 403 (D.C. Cir. 2024)......................................................... 17

*Edwards v. Ocwen Loan Servicing, LLC*,
  24 F. Supp. 3d 21 (D.D.C. 2014)....................................................... 29

*El Paso Nat. Gas Co. v. United States*,
  774 F. Supp. 2d 40 (D.D.C. 2011)..................................................... 15

*El Paso Nat. Gas. Co. v. United States*,
  750 F.3d 863 (D.C. Cir. 2014)................................................ passim

*Env't Def. Fund, Inc. v. Costle*,
  657 F.2d 275 (D.C. Cir. 1981).......................................................... 7

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985)................................................................ 34

*Fletcher v. United States*,
  730 F.3d 1206 (10th Cir. 2013) ........................................................................ 26, 27

*Herrera v. Wyoming*,
  587 U.S. 329 (2019) ................................................................................................ 17

*Hill v. U.S. Dep't of Interior*,
  151 F.4th 420 (D.C. Cir. 2025) ............................................................................. 18

*J.D. v. Azar*,
  925 F.3d 1291 (D.C. Cir. 2019) ............................................................................ 17

*Joshi v. Nat'l Transp. Safety Bd.*,
  791 F.3d 8 (D.C. Cir. 2015) .............................................................................. 32, 33

*Kapersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
  909 F.3d 446 (D.C. Cir. 2018) .............................................................................. 22

*Karst Env't Educ. & Prot., Inc. v. EPA*,
  475 F.3d 1291 (D.C. Cir. 2007) ............................................................................ 32

*Koretoff v. Vilsack*,
  614 F.3d 532 (D.C. Cir. 2010) ................................................................................ 6

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .............................................................................. 6, 30, 31, 34

*Passatino v. Weissmann*,
  752 F. Supp. 3d 168 (D.D.C. 2024) ...................................................................... 22

*Quick Bear v. Leupp*,
  210 U.S. 50 (1908) ................................................................................................ 24

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
  324 F.3d 726 (D.C. Cir. 2003) .............................................................................. 33

*Rtskhiladze v. Mueller*,
  784 F. Supp. 3d 256 (D.D.C. 2025) ...................................................................... 32

*Shoshone-Bannock Tribes of Fort Hall Rsrv. v. Shalala*,
  988 F. Supp. 1306 (D. Or. 1997) .......................................................................... 22

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .............................................................................................. 17

*Trudeau v. Fed. Trade Comm'n*,
  456 F.3d 178 (D.C. Cir. 2006) .............................................................................. 13

*United States v. Jicarilla Apache Nation*,
  564 U.S. 162 (2011) ........................................................................................ passim

*United States v. Navajo Nation*,
  537 U.S. 488 (2003) .......................................................................................... 3, 15

*United States v. Navajo Nation,*
  556 U.S. 287 (2009) ................................................................................... 3, 19

*United States v. Washington,*
  641 F.2d 1368 (9th Cir. 1981) ........................................................................ 17

*Valero Energy Corp. v. EPA,*
  927 F.3d 532 (D.C. Cir. 2019) ....................................................................... 33

*W. Org. of Res. Councils v. Jewell,*
  124 F. Supp. 3d 7 (D.D.C. 2015) ........................................................... 6, 13, 29

*W. Org. of Res. Councils v. Zinke,*
  892 F.3d 1234 (D.C. Cir. 2018) ........................................................................ 7

**Statutes**

25 U.S.C. § 162a(a) ....................................................................................... 4, 26

25 U.S.C. § 162a(d) ........................................................................................ 4, 5

25 U.S.C. § 162a(d)(1) .................................................................................. 5, 30

25 U.S.C. § 162a(d)(5) .................................................................................. 5, 30

25 U.S.C. § 162a(d)(6) ...................................................................................... 30

25 U.S.C. § 271 .................................................................................................. 8

25 U.S.C. § 4011(a) ................................................................................ 4, 26, 27

25 U.S.C. § 4044 ....................................................................................... passim

25 U.S.C. § 4044(2) ...................................................................................... 5, 20

25 U.S.C. § 4044(2)(A)–(B) ........................................................................ 21, 23

25 U.S.C. § 4044(3) ........................................................................................... 5

5 U.S.C. § 702 ................................................................................................. 2, 6

5 U.S.C. § 706(2)(A) .......................................................................................... 7

Pub. L. No. 103-412, 108 Stat. 4239 (1994) ................................................. 2, 27

**Regulations**

25 C.F.R. §§ 2.800–2.825 ................................................................................. 30

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) ............................................................. 23

S. Rep. No. 91-501 (1969) ................................................................................ 28

## INTRODUCTION

This case is a putative class action to compel a comprehensive accounting of the United States' system of federal Indian boarding schools over a 150-year period that began in 1819. Named Plaintiffs Wichita and Affiliated Tribes and Washoe Tribe of Nevada and California bring this action purportedly on behalf of all Tribes whose citizens attended a boarding school over that period.

In their complaint, Plaintiffs describe the objectives of forced assimilation and territorial dispossession that drove many of the federal government's policies toward tribes throughout the nineteenth and early twentieth centuries. The complaint also describes the conditions at the federal Indian boarding schools, which often were extremely harsh, abusive, and lacking in adequate care. Those facts generally are not contested. The Department of the Interior recently investigated and detailed the history and legacy of the federal Indian boarding school system in a two-volume investigative report released in May 2022 (Vol. I) and July 2024 (Vol. II). The complaint draws its factual allegations largely from that report.

This case thus is not a dispute about the impacts of the federal Indian boarding school system. It is an action to compel an accounting. To succeed in stating a claim for a trust accounting, Plaintiffs must identify a substantive source of law—a treaty, statute, or regulation—that requires the accounting they seek. *El Paso Nat. Gas. Co. v. United States*, 750 F.3d 863, 895 (D.C. Cir. 2014). Plaintiffs fail to do so here because they have not identified any treaty, statute, or regulation that requires Interior to undertake an accounting of the federal Indian boarding school system or its funding.

*First*, Plaintiffs fail to state a claim for an accounting of federal Indian boarding schools based solely on the United States' trust relationship with federally recognized tribes. Binding precedent makes clear that the United States' general trust relationships with tribes cannot alone

1

create an enforceable trust obligation. *See, e.g.*, *El Paso Nat. Gas Co.*, 750 F.3d at 892. "So before a tribe can seek to compel an accounting, it 'must first identify a *substantive source of law* that establishes that specific fiduciary duty.'" *Cherokee Nation v. Dep't of Interior*, 754 F. Supp. 3d 107, 119 (D.D.C. 2024) (quoting *El Paso Nat. Gas Co.*, 750 F.3d at 895) (cleaned up). Here, Plaintiffs' attempt to rely on the federal government's trust relationship and alleged trust responsibilities related to Indian education fails to meet that standard.

*Second*, Plaintiffs fail to state a statutory claim for an accounting of the Indian boarding school system. The only potentially viable statutory source of a historical accounting duty that Plaintiffs identify in the complaint is the American Indian Trust Fund Management Reform Act of 1994 ("1994 Act"), Pub. L. No. 103-412, 108 Stat. 4239 (codified at 25 U.S.C. §§ 4001–4061.). But the 1994 Act did not address federal Indian boarding schools. And its plain text forecloses Plaintiffs' claims for a comprehensive accounting of the federal Indian boarding school system.

*Third*, Plaintiffs cannot state a claim against Interior's investigative report into the Indian boarding school system under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. The investigative report is not a final agency action challengeable under section 706(2) of the APA. And Plaintiffs cannot state a failure-to-act claim under APA section 706(1) related to the investigative report because no law requires Interior to prepare that report or undertake an accounting based upon its findings.

Plaintiffs have failed to state a claim upon which relief can be granted. This Court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

I.    **Legal background**

    A.    **The United States' trust relationship with Indian tribes**

The federal government's trust relationship with federally recognized Indian tribes "is long established." *El Paso Nat. Gas. Co.*, 750 F.3d at 892. But that "general trust relationship alone does not afford an Indian tribe with a cause of action against the Government." *Id.* "Something more is needed." *Id.* A Tribal plaintiff asserting that the United States has violated a trust duty "must identify a substantive source of law that establishes specific fiduciary or other duties and allege that the Government has failed faithfully to perform those duties." *United States v. Navajo Nation* ("*Navajo I*"), 537 U.S. 488, 490 (2003); *United States v. Navajo Nation* ("*Navajo II*"), 556 U.S. 287, 302 (2009) (dismissing claims for failure to identify "a specific, applicable, trust-creating statute or regulation that the Government violated"). That is because "[t]he Federal Government owes judicially enforceable duties to a tribe 'only to the extent it expressly accepts those responsibilities.'" *Arizona v. Navajo Nation* ("*Navajo III*"), 599 U.S. 555, 564 (2023) (quoting *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 177 (2011)).

"In root and branch, the Government's trust obligations are 'established and governed by statute,' not the common law." *Cherokee*, 754 F. Supp. 3d at 119 (quoting *Jicarilla*, 564 U.S. at 165). "So before a tribe can seek to compel an accounting, it 'must first identify a *substantive source of law* that establishes that specific fiduciary duty.'" *Id.* (quoting *El Paso Nat. Gas Co.*, 750 F.3d at 895) (cleaned up). "The scope of the Government's fiduciary duties is then a 'matter of statutory interpretation.'" *Id.* (quoting *El Paso Nat. Gas Co.*, 750 F.3d at 895).

**B.    The American Indian Trust Fund Management Reform Act of 1994**

In 1989, the House Committee on Government Operations began to hold hearings to "investigate the way [the Bureau of Indian Affairs ("BIA")] handled Indian trust funds." *Cherokee*, 754 F. Supp. 3d at 115. "The Committee concluded that BIA's management had been 'grossly inadequate,' that the agency 'failed to accurately account for Trust Fund monies,' and that it could not 'even provide account holders with meaningful periodic statements on their account balances.'" *Id.* (citation omitted). In the wake of those investigations and findings, Congress enacted the 1994 Act. "Broadly, the Act required the Secretary to provide 'adequate systems of accounting,' 'adequate controls over receipts and disbursements,' 'timely reconciliations,' and 'consistent, written policies and procedures for trust management and accounting.'" *Cherokee*, 754 F. Supp. 3d at 115 (quoting 25 U.S.C. § 162a(d)).

The complaint identifies three potentially relevant sections of the 1994 Act, which are now codified in Title 25 to the U.S. Code at section 4011, section 4044 and section 162a(d).[1] Section 4011(a) provides that "[t]he Secretary shall account for the daily and annual balance of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to section 162a of this title." 25 U.S.C. § 4011(a). Section 162a(a) authorized the Secretary, with certain limitations, to deposit and invest outside of the U.S. Treasury "funds of any Indian tribe" that are "held in trust by the United States." *Id.* § 162a(a) ; *see also* § 162a(c)  (governing mutual fund investments). Section 4011 "further requires the Secretary to provide periodic statements of account performance to

---

[1] References to specific provisions of the 1994 Act refer to those sections as codified in Title 25 of the U.S. Code.

each account holder and conduct an annual audit of trust accounts each fiscal year." *Cherokee*, 754 F. Supp. 3d at 115 (citing section 4011).

Section 4044 required the Secretary to submit to Congress, by May 31, 1996, "a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995." 25 U.S.C. § 4044. The report had to include "attestations by each account holder" that either (a) "the Secretary has provided the account holder with as full and complete accounting as possible of the account holder's funds to the earliest possible date, and that the account holder accepts the balance as reconciled by the Secretary," or (b) "the account holder disputes the balance of the account holder's account as reconciled by the Secretary and [a] statement explaining why the account holder disputes the Secretary's reconciled balance." § 4044(2) . If the account holder disputed the balance, the report also had to include a statement from Interior "outlining efforts the Secretary will undertake to resolve the dispute." § 4044(3) . Section 4044 thus afforded Interior seventeen months to complete three tasks: (1) reconcile tribal trust fund accounts; (2) obtain an attestation from each tribe that the reconciliation was "as full and complete accounting as possible" or a statement that the tribe disputed its balances; and (3) submit the completed report to Congress. § 4044.

Section 162a(d), as added by the 1994 Act, enumerates certain "trust responsibilities," including "[p]roviding adequate systems for accounting," "[p]reparing and supplying account holders with periodic statements of their account performance," and "establishing consistent, written policies and procedures for trust fund management and accounting." § 162a(d)(1) , (5) , (6) . Section 162a(d)'s guidelines did not "establish a specific fiduciary duty" and "are not actionable on their own." *Cherokee*, 754 F. Supp. 3d at 134 (quoting *El Paso Nat. Gas Co*., 750 F.3d at 895) (cleaned up). Instead, section 162a(d) "'lists some of the means through which the

Secretary shall discharge' its trust obligations *Id.* (quoting *Cobell v. Norton* ("*Cobell VI*"), 240 F.3d 1081, 1101 (D.C. Cir. 2001)).

Interior engaged the accounting firm of Arthur Anderson LLP to complete the reconciliation that section 4044 mandated. *Cherokee*, 754 F. Supp. 3d at 116. Faced with a "Herculean task," Arthur Anderson acknowledged that "a complete reconciliation of all trust activity was impractical, cost prohibitive, and in all likelihood, impossible," because "not all records would be available for a full accounting" and due to the substantial "cost and time constraints." *Id.* (citations omitted). Given those constraints, Arthur Anderson limited its reconciliation to the twenty-year period from July 1972 through September 1992. *Id.* Interior delivered its reconciliation report to Congress in May 1996. *Id.* Though not relevant to the present motion, the Department of Interior has confirmed that Wichita and Affiliated Tribes and Washoe Tribe of Nevada and California each received reconciliation reports in 1996.

### C.    The Administrative Procedure Act

The APA "establishes a cause of action for those 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action.'" *Koretoff v. Vilsack*, 614 F.3d 532, 536 (D.C. Cir. 2010) (quoting 5 U.S.C. § 702).

Section 706(1) of the APA "directs the court to 'compel agency action unlawfully withheld.'" *W. Org. of Res. Councils v. Jewell*, 124 F. Supp. 3d 7, 10 (D.D.C. 2015) (quoting 5 U.S.C. § 706(1)). A claim under section 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 64 (2004). The condition that the action be "required" is limited to acts required by law; it does not apply to actions an agency willingly undertakes as a matter of policy or otherwise. *Id.* at 65 ("The limitation to *required* agency action rules out

judicial direction of even discrete agency action that is not demanded by law. . . .”). “In other words, [a plaintiff] must show that the Secretary is subject to a ‘legal duty’ that is ‘ministerial or nondiscretionary’ and amounts to ‘a specific, unequivocal command.’” *Cherokee*, 754 F. Supp. 3d at 133 (quoting *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018)).

Section 706(2) of the APA directs courts to “hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A). Section 706(2) thus “provides a right to judicial review of all ‘final agency action for which there is no other adequate remedy in a court.’” *Bennett v. Spear*, 520 U.S. 154, 175 (1997) (quoting 5 U.S.C. § 704). The standard of review under § 706(2) is “highly deferential” and “presumes the agency’s action to be valid.” *Env’t Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981).

## II.    Factual Background[2]

### A.    Interior’s investigative report on Indian boarding schools

On June 22, 2021, the Secretary of the Interior announced the Federal Indian Boarding School Initiative, directing the Department “to undertake an investigation of the loss of human life and lasting consequences of the federal Indian boarding school system.” Vol. I 3; Vol. II 9. The Initiative’s goals included: “identifying federal Indian boarding school facilities and sites;” “identifying names and Tribal identities of Indian children who were placed in federal Indian

---

[2] All citations in Sections A and B are to the two-volume report prepared by the U.S. Department of the Interior: Bryan Newland, U.S. Dep’t of the Interior, *Federal Indian Boarding School Initiative Investigative Report, Vol. I* (2022) (“Vol. I”); Bryan Newland, U.S. Dep’t of the Interior, *Federal Indian Boarding School Initiative Investigative Report, Vol. II* (2024) (“Vol. II”). The report is a public record cited in Plaintiffs’ complaint. And Plaintiffs stated that “[b]oth volumes, and their appendices,” were attached as Exhibits 1 and 2, Compl. ¶ 4 n.1, Dkt. No. 1. The complaint filed, however, does not include any attachments. For ease of review, and because the reports are incorporated into Plaintiffs’ complaint, Defendants attach both volumes to this motion as Exhibits 1 and 2.

boarding schools;" "identifying locations of marked and unmarked burial sites of remains of Indian children located at or near school facilities;" and "incorporating viewpoints, including those of descendants, on the experiences in and impacts of the federal Indian boarding school system." Vol. II 10; Vol. I 8. Though the Initiative largely was not focused on funding for the schools, the Department researched congressional appropriations for the boarding school system made between 1871 and 1969. Vol. II 51. Due to time and resource constraints, the report does not estimate actual amounts spent on federal Indian boarding schools or similar institutions. *Id.*

In conducting the investigation and publishing the two volumes, Department staff and contractors reviewed "approximately 103 million pages of U.S. Government records." Vol. II 5. The Department released Volume I of its Investigative Report in May 2022 and Volume II in July 2024.

Interior reported that for over 150 years beginning in 1819, the United States operated and oversaw approximately 417 federal Indian boarding schools across thirty-seven states and U.S. territories. Act of March 3, 1819, ch. 85, 3 Stat. 516 (codified at 25 U.S.C. § 271); Vol. II 31. The federal Indian boarding school system was designed in large part to accomplish the federal policy objectives to dispossess tribes of territory and force assimilation of Native children to European and American culture. Vol. I 37, 51. Between 1819 and 1969, Interior estimates that at least 18,624 Native children entered the federal Indian boarding school system. Vol. II 92. It is well documented that the conditions were harsh, abusive, and lacking in adequate care. Vol. I 56. Interior has determined that "at least 973 American Indian, Alaska Native, and Native Hawaiian children died while attending federal Indian boarding schools." Vol. II 5.

Funding sources for federal Indian boarding schools varied over time. Before 1871, Indian boarding schools were funded through treaty stipulations. *Id.* at 52. After the end of

formal treaty making, Congress began to make general appropriations for the system in fiscal year 1871 and specific appropriations for the system in fiscal year 1875. *Id.* In addition to appropriations, funding was derived from other sources, such as educational provisions in existing Indian treaties, investment proceeds from bonds and other securities held by the United States and proceeds from tribal land sales. Vol. I 43. In the report, Interior estimated the appropriations made by the United States between 1871 and 1969 for Indian education and associated assimilation policies. Vol. II 5. The report does not analyze other potential funding sources for the boarding school system or make findings related to whether trust funds were used to fund the schools. The report does make clear, however, that the estimated congressional appropriations

> does not include the present-day value of Indian territory loss associated with the Federal Indian boarding school system, any funds that may have been obtained from Tribal trust accounts for the benefit of Indians and maintained by the United States, or funds expended by other institutions including religious institutions and organizations for Indian boarding school operation.

*Id.* at 93; *see also* Vol. I 45 ("The total amount of Tribal or individual Indian trust fund account monies, *if any*, held in trust by the United States and used to directly support the Federal Indian boarding school system is currently unknown.") (emphasis added).

In response to recommendations from then-Assistant Secretary – Indian Affairs in Vol. I, the Secretary launched "The Road to Healing" tour. Vol. II 78–79. The tour visited twelve areas across the country, "provid[ing] survivors of the Federal Indian boarding school system the opportunity to share their experiences, help connect communities with trauma-informed support, and facilitate collection of an oral history." Vol II 11.

B.      **Plaintiffs' complaint**

Plaintiffs are a putative class of "[a]ll Native Nations whose citizens between 1819 and 1969 attended a boarding school pursuant to the Boarding School Program." Compl. ¶ 156. Plaintiffs seek a comprehensive accounting of federally run Indian boarding schools over a 150-year period that began in 1819, alleging that "[t]he United States has a moral, political, and legal responsibility to fully account for the Boarding School Program." *Id.* ¶ 23.

Count I of Plaintiffs' complaint seeks an accounting of the federal Indian boarding school system based on the "federal trust responsibility." *Id.* ¶ 56. In Count I, Plaintiffs point to three alleged sources of that accounting duty. First, Plaintiffs allege that "[a]s trustee over Native Nations' education trust accounts" "the United States has an equitable duty to accurately account for all trust asset expenditures." *Id.* ¶ 177. Second, Plaintiffs point to treaties between the United States and other tribes, alleging that the United States' "trust responsibility over Native children's education" requires the United States to "provide an accounting of Trust Funds that are held or have been held by the United States … for purposes of the education of Native Nations' children." *Id.* ¶¶ 169, 184.

Third, Plaintiffs allege that a string of statutes affirm the United States' obligation "to ensure that all Native children receive an adequate education" and require an accounting of education related trust funds.  *Id.* ¶ ¶ 169–70, 178. Plaintiffs, however, focus primarily on one statute: the 1994 Act. *Id.* ¶¶ 178–80, 182–83. Plaintiffs first point to section 4044, alleging that Interior never provided a reconciliation of "accounts used to pay for Native children's education, including those expended for the Boarding School Program." *Id.* ¶¶ 179–80. Plaintiffs also cite to section 4011, alleging that it requires Interior to account for "funds allocated from Native

Nations' trust accounts for the purported benefit of Native children's education." *Id*. ¶¶ 178, 182–83.

Count II seeks an accounting of the federal Indian boarding school system under the APA. Plaintiffs allege claims under APA sections 706(1) and 706(2). First, under APA section 706(2), Plaintiffs allege that Interior's decision to omit certain types of boarding school funding from the investigative reports and to not provide a full accounting was arbitrary and capricious. *Id*. ¶¶ 195, 197. Second, under APA section 706(1), Plaintiffs allege that Interior has unlawfully withheld an accounting related to the Indian boarding schools required by sections 4011 and 162a(d) of the 1994 Act. *Id*. ¶¶ 199–206. The remedy Plaintiffs seek for the violations of both 706(1) and 706(2) is an order requiring that Interior "account for and provide a detailed itemization" of the boarding schools' funding sources, the use of those funds, and the economic harms related to the program. *Id*. ¶ 208.

Both Counts I and II focus solely on Interior's alleged obligation to provide an accounting of the Indian boarding school system. Though Plaintiffs cite general trust language found in statutes and treaties, they do not allege a breach of trust for any non-accounting duty. As the remedy for both counts, Plaintiffs seek a comprehensive accounting of the federal Indian boarding school system itself, well beyond any funds held in trust for a specific tribe. According to Plaintiffs, that accounting should include "a detailed itemization" of nine categories:

1. The $23.3 billion the United States estimates were appropriated for the Boarding School Program and associated policies, including how such funds were disbursed for the Native Nations' purported benefit;

2. The monies removed from Native Nations' Trust accounts for expenditure on the Boarding School Program and associated policies, including detail regarding the retention by the United States and/or subsequent disbursement of such funds for the Native Nations' purported benefit;

3.  The manner in which such monies from Native Nations' Trust accounts were pooled;

4.  The performance as a result of investment by the United States of any funds held in trust by the federal government for the purpose of Native children's education;

5.  The value of land ceded in exchange for the United States' promises to Native Nations related to education;

6.  The "Treaty-stipulated support" spent to support the Program;

7.  The value, including any monies, generated by "Indian child labor both for institution operations and through the Outing System to non-Indian families;"

8.  The economic harm caused by the Boarding School Program; and

9.  The remainder of Native Nations' funds and assets that have been taken by the United States and allocated for the education of Native Nations' children.

*Id.* ¶¶ 185, 208 (footnotes ommitted).

## LEGAL STANDARDS

To state a viable claim for relief at the pleading stage where the United States is the defendant, a plaintiff must establish "federal subject matter jurisdiction, a waiver of sovereign immunity, and a cause of action." *El Paso Nat. Gas Co.*, 750 F.3d at 892. To establish a cause of action for an accounting, a plaintiff must "identify a substantive source of law that establishes that specific fiduciary duty." *Id.* at 895.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). However, the Court need not accept as true any "legal conclusion couched as a factual allegation," or and inference "unsupported by the

facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted). "Along with the allegations made within the four corners of the complaint, the court can consider 'any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice.'" *W. Org. of Res. Councils*, 124 F. Supp. 3d at 10 (alteration in original) (citation omitted).

## ARGUMENT

Plaintiffs' complaint should be dismissed because it fails to state a claim for an accounting of the federal Indian boarding school system. To state an accounting claim against the federal government, Plaintiffs must plausibly allege a substantive source of law that establishes the specific accounting duty they seek to vindicate. They fail to do that here.

Plaintiffs first attempt to rely on the federal government's trust relationship with federally recognized tribes. But neither that general trust relationship, nor the treaties and statutes cited in the complaint relating to the federal government's role in Native children's education, establish an accounting duty. Count I should therefore be dismissed for failure to state a claim for an accounting based on the federal trust responsibility.

Plaintiffs also fail to state a statutory claim for an accounting of the federal Indian boarding school system. The only potentially viable statute that the complaint identifies is the 1994 Act. But the 1994 Act was not about accounting for the Indian boarding school system or education. And none of the statutory provisions that Plaintiffs identify in the 1994 Act require the accounting of Indian boarding schools that Plaintiffs seek here. Whether construed as freestanding claims under the 1994 Act or as APA claims, Plaintiffs fail to state a claim under the 1994 Act.

Finally, Plaintiffs fail to state an APA claim against Interior's investigative report into federal Indian boarding schools. The report itself is not a final agency action, and Plaintiffs

13

cannot point to any law that required Interior to prepare the report, nor to undertake a follow-on accounting. Count II should also be dismissed for failing to state a claim for an accounting under the APA.

**I.      Plaintiffs cannot state a claim for an accounting arising under the United States' general trust relationship with federally recognized Indian tribes.**

The general trust relationship between the United States and tribes does not create enforceable duties, including any duty to provide an accounting. And where Plaintiffs fail to identify the specific duty they seek to enforce in a statute, treaty, or regulation—here, the duty to account for the boarding school system—equitable principles cannot fill the gaps to create duties that do not otherwise exist. Yet, apart from the 1994 Act, Plaintiffs seek to base their claims in Count I that an accounting is owed on equitable duties or general trust language alone. The Supreme Court has repeatedly rejected tribes' efforts to plead breach of trust claims on those bases. The Court should likewise dismiss Plaintiffs' claims here.

To state a claim for breach of trust against the United States, Plaintiffs must identify a statute, treaty, or regulation that gives rise to the enforceable trust duty that Plaintiffs seek to vindicate. *Jicarilla*, 564 U.S. at 165. "Just as the trust relationship must have a statutory source, so must the Government's specific fiduciary duties as trustee." *Cherokee*, 754 F. Supp. 3d at 119. The substantive source of law identified must therefore not only implement an aspect of the general trust relationship, but include the specific duty Plaintiffs seek to enforce; here, an accounting of the federal Indian boarding school system.

In Count I, Plaintiffs point to three sources—"equity, treaties, and statutes"—they allege require the accounting they demand. Compl. ¶ 184. Specifically, Plaintiffs allege an accounting is owed based on (1) an "equitable duty to accurately account for all trust asset expenditures," *id.* ¶ 177; (2) the duties under various treaties between the United States and other tribes, *id.* ¶ 169;

and (3) a statutory duty under the 1994 Act and other statutes that reference Indian education, *id.* ¶¶ 170, 178–79, 182–83. The latter we discuss below and explain why none of the duties in the 1994 Act apply here. As for the remaining sources, Plaintiffs fail to allege any "'specific rights-creating or duty-imposing' language" that shows "the Government has expressly accepted the obligations" Plaintiffs assert the government owes. *Navajo III*, 599 U.S. at 564 (quoting *Navajo I*, 537 U.S. at 506).

*First*, the United States has no actionable duty to account based on equity alone. Count I of the complaint references various aspects of the general trust relationship between the United States and Indian nations related to education and alleges that the United States has a duty to account to trust beneficiaries based on unidentified equitable principles. Compl. ¶ 177. But the Supreme Court and courts in this Circuit have repeatedly rejected that argument. The government does not assume fiduciary responsibilities based solely on the general trust relationship or equitable principles. *Navajo III*, 599 U.S. at 565–66 (citing *Jicarilla*, 564 U.S. at 174); *El Paso Nat. Gas Co.*, 750 F.3d at 893; *Cherokee*, 754 F. Supp. 3d at 119 ("The trust relationship alone does not unlock the full suite of equitable remedies for common law breach of fiduciary duties."). "So before [Plaintiffs] can seek to compel an accounting, [they] 'must first identify *a substantive source of law* that establishes that specific fiduciary duty.'" *Cherokee*, 754 F. Supp. 3d at 119 (quoting *El Paso Nat. Gas Co.*, 750 F.3d at 895) (cleaned up). Plaintiffs thus cannot state a claim based on an equitable duty "unmoored from statutory support." *Id.* at 120; *see also El Paso Nat. Gas Co. v. United States*, 774 F. Supp. 2d 40, 53 (D.D.C. 2011) (holding that "without specific statutory mandates, from which to infer fiduciary duties, there is no independent cause of action"). Furthermore, Plaintiffs cannot state a claim for a trust accounting of monies, such as congressional appropriations, that are not (and never have been) held in trust

on behalf of a tribe and thus do not form any trust corpus for which the government could account.

*Second*, general trust language from various treaties cannot form the basis of Plaintiffs' request for an accounting. *See* Compl. ¶ 169. Plaintiffs do not allege that they signed treaties that include a duty for the United States to provide an accounting for the boarding school system. The "Washoe have no formal treaty with the United States." *Id.* ¶ 39. And Wichita's treaty does not mention boarding schools, funding for schools, or anything about accounting. *See Id.* ¶ 38 n.32. The only provision related to education gives the President discretion to send school teachers to the Wichita to instruct their children. *Id.* ¶ 107. But Plaintiffs cannot show that a discretionary decision to provide teachers creates a fiduciary duty to provide an accounting of congressional appropriations and trust funds. *See Id.* ¶ 185. And this Court cannot rewrite or expand the treaty "beyond [its] clear terms." *Navajo III*, 599 U.S. at 565. Absent specific rights creating duties to provide the accounting they seek, the Court cannot "infer duties not found in the text" of the treaty. *Id.* at 566.

Unable to rely on their own treaties, Plaintiffs attempt to show the required trust relationship through treaties signed by other tribes. Throughout their complaint, Plaintiffs allege that treaties signed by the United States and other tribes establish a trust relationship related to education of Native children. Compl. ¶¶ 6, 109, 113, 169. While Plaintiffs identify general trust language from those treaties, Plaintiffs fail to allege that any of the treaties create "a conventional trust relationship with a tribe as to a particular trust asset," let alone specific duties that would require "the United States to take affirmative steps" such as "providing an accounting" of the Indian boarding school system. *Navajo III*, 599 U.S. at 566. That pleading failure is dispositive, as "neither the general trust relationship between the federal government

16

and Indian Tribes nor the mere invocation of trust language … is sufficient to create a cause of action for breach of trust." *El Paso Nat. Gas Co.*, 750 F.3d at 893.

And even if those treaties create fiduciary duties, Plaintiffs lack standing to enforce them. "A treaty is 'essentially a contract between two sovereign nations.'" *Herrera v. Wyoming*, 587 U.S. 329, 345 (2019) (citation omitted). Like any contract, treaties generally bind and benefit only the tribes who signed them. Indeed, treaty rights generally do not extend even to individual members of the signatory tribe, let alone third-party tribes who have no relation to the signatory tribe. *See United States v. Washington*, 641 F.2d 1368, 1372 (9th Cir. 1981) ("The appellants seek to exercise treaty rights as tribes. They may do so only if they are the tribes that signed the treaties."). Plaintiffs therefore lack standing to assert a breach of trust under treaties they did not sign, and those treaties cannot create duties owed to tribes not party to the treaties.

Plaintiffs' status as representatives of a purported class does not alter that conclusion. "At the pleading stage, 'that a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally' have Article III standing." *Doe 1 v. Apple Inc.*, 96 F.4th 403, 413 n.2 (D.C. Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016)) (cleaned up). And while it is generally enough to show that just one plaintiff can establish standing, "the one plaintiff with standing must be a *class representative*—an absent class member's individual standing will not suffice." *J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019). Plaintiffs cannot base their standing on treaties signed by absent Indian tribes that are not named class representatives.

*Third*, none of the statutes Plaintiffs cite other than the 1994 Act (which for reasons stated below cannot sustain their claims) creates a duty to account, let alone to account for the boarding school system. Along with 1994 Act, Plaintiffs contend a series of statutes, found

across the United States Code and Statutes at Large, show that "[t]he United States has affirmed its obligation" to provide adequate education to Native children. Compl. ¶ 170; *see also id.* ¶¶ 104–05. But listing statutes related to Indian education does not create an accounting duty. Plaintiffs must plausibly allege a breach of the specific duties that the source of law they identify requires, not duties found only in their complaint. *Hill v. U.S. Dep't of Interior*, 151 F.4th 420, 431 (D.C. Cir. 2025). Plaintiffs fail to connect the statutory language about the United States' general trust relationship related to Indian education to the specific, fiduciary duties to provide the accounting that they allege is owed in the complaint. Nor can a general trust relationship create an inherent accounting duty. "Though some courts have suggested that tribal trust relationships create an inherent duty to account . . . these cases clash with recent Supreme Court precedent." *Cherokee*, 754 F. Supp. 3d at 119 (citing *Cobell VI*, 240 F.3d at 1103, and *Assiniboine and Sioux Tribe of the Fort Peck Indian Rsrv. v. Norton*, 211 F. Supp. 2d 157, 158 (D.D.C. 2002)). Without textual support in the statutes cited, Plaintiffs fail to plausibly allege that any of the statutes they cite give rise to the specific fiduciary duty to account alleged in the complaint.

For similar reasons, even if the statutes and treaties cited led the Secretary of the Interior to exercise control over Indian education and the boarding school system, *see* Compl. ¶ 111, that still would not create an inherent accounting duty. Control matters only when Congress has both created a trust relationship as to a specific trust asset and imposed specific duties. *Navajo III*, 599 U.S. at 566. A trust relationship as to Indian education and the boarding school system based on the statutes and treaties cited would be no more than a "bare or limited" trust that does not include "all the fiduciary duties of a private trustee," such as "providing an accounting." *Id.* at 565–66. "When the Tribe cannot identify a specific, applicable, trust-creating statute or

regulation that the Government violated, neither the Government's control over Indian assets nor common-law trust principles matter." *Jicarilla*, 564 U.S. at 177 (quoting *Navajo II*, 556 U.S. at 302) (cleaned up).  Indeed, "[i]t is now clear that 'neither the general trust relationship between the federal government and Indian Tribes nor the mere invocation of trust language in a statute' is enough to create a cause of action for breach of trust, such as a failure to provide an accounting." *Cherokee*, 754 F. Supp. 3d at 119 (quoting *El Paso Nat. Gas Co.*, 750 F.3d at 893).

The statutes and treaties Plaintiffs cite do not give rise to any accounting duties. And Plaintiffs cannot base their claims on equity alone. Plaintiffs' claims in Count I based on these sources fail to plausibly state a claim.

## II.    Plaintiffs fail to state a claim for an accounting of the Indian boarding school system under the 1994 Act.

The 1994 Act does address accounting.  But the 1994 Act does not require an accounting of the federal Indian boarding school system.

Plaintiffs focus on three sections of the 1994 Act in particular: section 4044, section 4011, and section 162a(d). None of those sections addresses Indian education or the system of federally run Indian boarding schools. Sections 4044 and 4011 address accountings, but neither requires the accounting of the federal Indian boarding school system that Plaintiffs seek here. And section 162a(d) does not create any enforceable accounting duties at all. The complaint therefore fails to identify a statutory source for the accounting duty it demands, and Plaintiffs fail to state a claim for an accounting of the federal Indian boarding school system under the 1994 Act.

A.    **Section 4044 does not require an accounting of the Indian boarding school system.**

Plaintiffs identify section 4044 of the 1994 Act as one purported statutory source of an accounting duty. Compl. ¶ 179. Citing the portion of section 4044 that required Interior to prepare a report for Congress that reconciled tribal trust fund accounts as of September 1995, Plaintiffs allege that Interior never provided a reconciliation of "accounts used to pay for Native children's education, including those expended for the Boarding School Program." *Id.* ¶¶ 179–80.

But the complaint fails to state a claim for an accounting of Indian boarding school system under section 4044 for at least two reasons. *First*, Plaintiffs do not allege that Interior failed to provide the required reconciliation report to Congress or that the reconciliation report was arbitrary and capricious. *Second*, section 4044 does not address federal Indian boarding schools at all, much less mandate a comprehensive accounting of the 150-year Indian boarding school system. Thus, even if Plaintiffs could plausibly allege some accounting claim under section 4044, it would not include the broad accounting of the federal Indian boarding school system that Plaintiffs demand.

1.    **Plaintiffs fail to state an accounting claim based on section 4044's requirement that Interior submit a reconciliation report to Congress in 1996.**

To start, the Court should look to the statutory text. Section 4044 provides:

The Secretary shall transmit to the Committee on Natural Resources of the House of Representatives and the Committee on Indian Affairs of the Senate, by May 31, 1996, a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995.

25 U.S.C. § 4044. Before submitting the report, the Secretary had to obtain "attestations by each account holder." § 4044(2) . The attestations were to state that either (a) "the Secretary has

provided the account holder with as full and complete accounting as possible of the account holder's funds to the earliest possible date" and "the account holder accepts the balance as reconciled," or (b) "the account holder disputes the balance of the account holder's account as reconciled by the Secretary." *Id.* § 4044(2)(A)–(B).

By its plain terms, then, section 4044 "calls for a one-off reconciliation report to Congress." *Cherokee*, 754 F. Supp. 3d at 121. Because the statute also asked tribes to attest to whether Interior had provided "as full and complete accounting as possible," § 4044(2)(A), courts have interpreted section 4044 as requiring Interior to have also provided a retrospective, historical accounting to tribes. *See, e.g.*, *Cherokee*, 754 F. Supp. 3d at 121.

Importantly, unlike a common law accounting duty, which a beneficiary typically can demand at any time, section 4044's duty was time limited: "It was a one-off." *Id.* That is apparent from section 4044's text, which required Interior to provide a report to Congress by a date certain—May 31, 1996. 25 U.S.C. § 4044; *Cherokee*, 754 F. Supp. 3d at 122 (Section 4044's "primary task" was "providing a one-time, comprehensive report to Congress on the state of tribal trust fund accounts . . . [a]nd that task had a specific due date."). And section 4044 further required "attestations" that "the Secretary *has* provided the account holder with as full and complete accounting as possible." § 4044(2)(A) (emphasis added). "Congress's use of the present perfect 'has provided' suggests that the accounting requirement is one-and-done." *Cherokee*, 754 F. Supp. 3d at 122. Thus, "if the tribes have a cause of action to demand an accounting under § 4044, it is limited to the accounting performed in anticipation of the 1996 reconciliation report to Congress." *Id.*

Here, Plaintiffs do not allege that Interior failed to provide the required reconciliation report to Congress by the May 1996 deadline. Nor could they. *See, e.g.*, *id.* at 116 ("As ordered,

the Secretary delivered the Reconciliation Report to Congress in May 1996."); Management and Reconciliation of Indian Trust Fund Accounts: Hearing Before the Task Force on Indian Trust Fund Mgmt. of the H. Comm. on Res., 104th Cong. 50 (1996) ("The Secretary submitted the required report to the Congress on May 31, 1996 . . . .").[3]

Plaintiffs appear to allege section 4044 as a freestanding statutory basis to compel an accounting rather than as a claim under the APA. *See* Compl. ¶ 179 (citing section 4044 in Count I rather than the APA claim in Count II). But section 4044 does not provide an express right of action to tribes to challenge the reconciliation reports. *See* 25 U.S.C. § 4044. Nor should a private right of action be implied, because "private remedies follow *private rights*," and section 4044 "focuses on [the agency's] obligations, and not on the rights of the protected party." *El Paso Nat'l Gas Co.*, 750 F.3d at 889 (citation omitted). Indeed, section 4044 principally requires Interior to submit a report to Congress.

As to any APA claim, Plaintiffs "cannot bring a failure-to-act claim based on § 4044 because Interior took final agency action when it transmitted the [reconciliation report] to Congress." *Cherokee*, 754 F. Supp. 3d at 133. To state a claim under section 4044, then, Plaintiffs would have to allege that the reconciliation report Interior provided to Congress was arbitrary and capricious under section 706(2) of the APA.[4] But the complaint lacks any factual

---

[3] In reviewing a motion to dismiss, "[t]he court may take judicial notice of congressional hearings and legislative materials." *Passatino v. Weissmann*, 752 F. Supp. 3d 168, 174 n.3 (D.D.C. 2024) (citing *Kapersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018)).

[4] Regardless of whether section 4044 creates a freestanding right of action or is enforceable only through the APA, the APA's arbitrary and capricious review standard applies to the reconciliation report. That is because there is "a strong presumption in [the D.C.] Circuit that when a statute provides for judicial review but does not specify any standard for that review, it should be construed to include the APA standard." *Citizen Potawatomi Nation v. Salazar*, 624 F. Supp. 2d 103, 108–09 (D.D.C. 2009); *see also Shoshone-Bannock Tribes of Fort Hall Rsrv. v. Shalala*, 988 F. Supp. 1306, 1313 & n.4 (D. Or. 1997) (applying same rule to tribe's claim under the Indian

allegations related to the scope of the reconciliation report provided to Congress, or the underlying reports provided to the named Plaintiffs. In fact, the complaint does not acknowledge the reconciliation report at all. Plaintiffs therefore have not pleaded any facts to show that Interior has failed to comply with section 4044 and the complaint therefore fails to plausibly allege a claim under section 4044.[5]

### 2.    Section 4044 does not require the accounting Plaintiffs seek of the federal Indian boarding school system.

Plaintiffs' claim under section 4044 also fails because nothing in section 4044 requires Interior to undertake a comprehensive accounting of the federal Indian boarding school system. On its face, section 4044 does not mention Indian boarding schools at all. *See* 25 U.S.C. § 4044. And nothing in the text of section 4044 requires a specific reconciliation of "accounts used to pay for Native children's education" as Plaintiffs request. Compl. ¶ 180.

Instead, section 4044 focused generally on a reconciliation of "each tribal trust fund account for which the Secretary is responsible," balanced "as of September 30, 1995." 25 U.S.C. § 4044. And it required attestations from each account holder that they had received (or disputed they had received) "as full and complete accounting as possible of the account holder's funds." *Id.* § 4044(2)(A)–(B). Even assuming for purposes of this motion that the term "funds" should be given the broadest meaning afforded at common law, it would include at most "all 'money or

---

Self-Determination and Education Assistance Act and noting that "[t]his general principle has been applied under a variety of statutes"), *on reconsideration*, 999 F. Supp. 1395 (D. Or. 1998).

[5] Should the Court conclude that Plaintiffs have plausibly alleged a claim for an accounting under section 4044, Interior intends to bring a future motion demonstrating that both the Washoe and Wichita Tribes received reconciliation reports in 1996. The motion will also demonstrate that neither Tribe disputed its report at that time. Thus, "the limitations period for [any] § 4044 claim ran [by] December 2006," and any claims under section 4044 that survive this motion are time-barred. *Cherokee*, 754 F. Supp. 3d at 130–31.

property set aside as a trust and held by a trustee.'" *Cherokee*, 754 F. Supp. 3d at 121 (cleaned up) (quoting *Trust Fund*, Black's Law Dictionary (6th ed. 1990)).

But Plaintiffs are not just asking for an accounting of their trust funds or property. Instead, Plaintiffs are seeking a comprehensive accounting of the federal Indian boarding school system. According to the complaint, that would include detailed itemization of congressional appropriations, treaty-stipulated support for the boarding school system, money allegedly generated by the labor of Native children, and economic harm caused by the boarding school system. Compl. ¶¶ 185, 208. None of those categories fall within the funds that Interior holds in trust on behalf of Native Nations, even giving the term "funds" the broadest possible meaning to include non-monetary trust property.

For example, as the Supreme Court explained in 1908, congressional appropriations are not "trust funds." *See Quick Bear v. Leupp*, 210 U.S. 50 (1908). In *Quick Bear*, the Court upheld the expenditure of tribal funds held in trust to support sectarian schools. *Id.* at 82. In doing so, the Court explained the difference between Congress's gratuitous appropriations, to which no trust responsibility attaches, and appropriations made to fulfill treaty obligations. *Id.* at 77. Congressional appropriations are "gratuitous appropriations of public moneys for the purpose of Indian education." *Id.* at 81. No plausible reading of section 4044 would require an "accounting" of congressional appropriations spent on the federal Indian boarding school system. Thus, to the extent the United States expended money to support Indian boarding schools, those payments were not funds held in trust on the Nations' behalf. The same is true of other categories for which Plaintiffs seek an accounting, such as the value of alleged labor of Native children and any economic harm caused by the Indian boarding school system; they are not "tribal trust fund account[s]" within the meaning of section 4044.

Thus, even assuming Plaintiffs had stated a plausible claim under section 4044 generally (they have not), that claim would not include the broad accounting Plaintiffs are seeking here. Section 4044 does not provide a statutory basis for a comprehensive accounting of federal Indian boarding schools.

**B.    Section 4011 does not require an accounting of the federal Indian boarding school system.**

Plaintiffs also fail to state a claim for an accounting of the federal Indian boarding school system under section 4011. Plaintiffs allege violations of section 4011 in both counts of their complaint, first asserting it as a statutory basis for an accounting pursuant to the federal government's trust responsibilities in Count I, and then pleading it as an APA claim in Count II. Both counts contend that Interior failed to comply with its duties under section 4011 and that Plaintiffs therefore are entitled to an accounting of the federal Indian boarding school system. As with section 4044, however, Plaintiffs fail to state a claim under section 4011 because section 4011 did not require an accounting of the Indian boarding school system and does not mandate the accounting that Plaintiffs seek here.[6]

---

[6] Section 4011 cannot be a basis for both a freestanding cause of action and an action under the APA. *See, e.g.*, *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 846 F.3d 1235, 1244–45 (D.C. Cir. 2017) (APA relief is precluded "where Congress has provided 'an independent cause of action or an alternative review procedure'" (citation omitted)). Plaintiffs' claim under section 4011, like their claim under section 4044, should be brought under the APA. *But see Cherokee*, 754 F. Supp. 3d at 133 (finding Cherokee Nation had standalone cause of action under § 4011); *Fletcher v. United States*, 730 F.3d 1206, 1210 (10th Cir. 2013) (finding private right of action under § 4011 for individual Osage members). And because Plaintiffs seek to compel an accounting to which they claim to be entitled but not to have received, the claim should be construed as a failure-to-act claim under APA section 706(1). *Dalmar v. Blinken*, No. 23-cv-3315 (DLF), 2024 WL 3967289, at *6 n.4 (D.D.C. Aug. 26, 2024) ("[A] claim for 'agency action unlawfully withheld or unreasonably delayed' arises under § 706(1), not § 706(2)(A)." (citation omitted)). Regardless of whether Plaintiffs' claim is construed as a standalone cause of action under section 4011 or as an APA claim, Plaintiffs fail to state a claim because section 4011 does not require an accounting of the federal Indian boarding school system.

Section 4011 requires the Secretary to "account for the daily and annual balance of all *funds* held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are *deposited or invested pursuant to section 162a of this title*." 25 U.S.C. § 4011(a) (emphasis added). Assuming for purposes of this motion that section 4011 requires any retrospective accounting, it contains clear limiting language: the Secretary is to account for "funds" that are "deposited or invested."[7] *Id.* Section 162a(a), in turn, authorizes the Secretary to deposit tribal trust funds in banks. 25 U.S.C. § 162a(a) (titled "Deposit of tribal trust funds in banks"). Subsections 162a(b) and (c) go on to authorize the investment of certain tribal trust funds. *See* § 162a(b) (titled "Investment of collections from irrigation projects and power operations on irrigation projects") and § 162a(c) (titled "Investment of tribal trust funds in public debt obligations"). "Section 162a(a) is simply and all about granting the Secretary of the Interior authority to invest monies belonging to Native American trust fund beneficiaries." *Fletcher*, 730 F.3d at 1211.

"Taken together, §§ 4011 and 162a limit the scope of the Secretary's accounting obligation to financial assets, excluding real property and other assets that cannot be 'deposited' in a bank." *Cherokee*, 754 F. Supp. 3d at 126. Thus, by the statute's plain terms, Congress did not extend the duty to account to include non-monetary assets. *Jicarilla*, 564 U.S. at 177 ("The Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute."). Nor does section 4011 require an accounting of non-trust monies,

---

[7] Interior expressly preserves the argument that section 4011 created only a prospective accounting duty that does not require any retrospective accounting at all. But for purposes of this motion, we assume without conceding that the statute created a duty to provide some retrospective accounting, limited in scope by section 4011's plain text.

such as congressional appropriations or any other expenditures that were not held in trust on a tribe's behalf.

Section 4011 is also limited in its temporal reach. Section 4011 is limited to "funds . . . deposited or invested pursuant to section 162a of this title." 25 U.S.C. § 4011(a). Section 162a of Title 25 was not enacted until 1938. Act of June 24, 1938, 52 Stat. 1037. Indeed, the public law version of Section 4011 directly references section 162a's enactment date: "[t]he Secretary shall account for the daily and annual balance of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to the Act of June 24, 1938 (25 U.S.C. 162a)." 1994 Act, 108 Stat. at 4240. "Before 1938, all tribal trust funds were held by the U.S. Treasury and generally could not be 'deposited or invested' in private banks." *Cherokee*, 754 F. Supp. 3d at 127 (citing *Fletcher*, 730 F.3d at 1211–12). As a factual matter, then, funds could not have been "deposited or invested" pursuant to Section 162a before June 1938. Thus, section 4011(a) could not have created a duty to account for funds that the United States may have held under other authorities prior to that date. *See also Cobell VI*, 240 F.3d at 1102 (accounting under section 4011 is only available "so long as [the funds] were deposited *after the Act of June 24, 1938*") (emphasis added)).

Applying the text of section 4011 to Plaintiffs' claims here, Plaintiffs do not state a plausible claim for an accounting of the federal Indian boarding school system under section 4011. Like section 4044, section 4011 does not address the federal Indian boarding school system. So even assuming for purposes of this motion that section 4011 requires a retrospective accounting (*see supra* n.7), that accounting is far narrower than anything Plaintiffs seek here.

Any accounting under section 4011 would be limited to trust funds deposited or invested after 1938—more than a century after Plaintiffs allege the federal Indian boarding school system

began in 1819. Compl. ¶ 156. It thus cannot provide a statutory basis for an accounting of trust funds allegedly spent on the federal Indian boarding school system before 1938—excluding more than 100 years of the 150-year period for which Plaintiffs seek an accounting. Plaintiffs also cannot state a claim under section 4011 for an accounting of congressional appropriations, because appropriations are not "funds . . . deposited or invested" pursuant to the 1938 Act. The same is true of any treaty funds expended for federal Indian boarding schools, the value of money allegedly generated by the labor of Native children, or economic harm caused by the boarding school system. Plaintiffs thus have not plausibly alleged a claim for the accounting they seek under section 4011.

Plaintiffs also do not plausibly plead a claim for a narrower accounting of any alleged "pooled education fund" that was "deposited or invested" after 1938 and thus even arguably within the scope of section 4011. Throughout their complaint, Plaintiffs repeatedly reference an alleged "pooled" education fund.[8] The complaint goes so far as to allege that Interior "admit[ted]" in the boarding school report that there "existed a pooled fund or set of funds used to pay for the Boarding School Program." Compl. ¶ 181. That is incorrect and directly contradicted by the report itself. The complaint offers just two factual bases for the alleged pooled fund: (i) Interior's investigative boarding school report (*id.* ¶¶ 24, 181), and (ii) a Senate committee report prepared in 1969 (*id.* ¶ 129) (citing Committee on Labor and Public Welfare, Indian Education: A National Tragedy – A National Challenge (the "Kennedy Report"), S. Rep.

---

[8] *See* Compl. ¶¶ 24, 122, 129, 154, 160(h), 181, 199, 201–03, 208(c), and p. 66 (request for relief).

No. 91-501, at 146 (1969)).[9] Neither report discusses any pooled education fund nor supports the inference that such a fund existed.

As for the boarding school report, Plaintiffs provide a single cite to pages 44–45 of Volume I. Compl. ¶ 24 n.18. But nothing in pages 44–45 of that report mentions or suggests there was a pooled trust fund. Instead, that part of the report acknowledges that "[t]he United States used monies resulting from Indian wealth depletion from cessions of territories, and held in Federal trust accounts for Indian Tribes, to pay for the attempted assimilation process of Indians." Vol. I 44. It never suggests that Interior established a pooled fund consisting of comingled trust money. *See* Vol. I 44–45. The complaint also cites page 146 of the Kennedy Report. Compl. ¶ 129 n.141. But nothing on page 146 of that report discusses a pooled fund. Kennedy Report 146. The only potentially relevant language on page 146 states that "a large proportion of the expense for the operation of the schools came from Indian treaty funds and not Federal appropriations."[10] *Id.* It says nothing about any pooled education fund. *Id.* Because the complaint's only factual basis for the existence of a pooled education fund is these two reports, neither of which mentions or supports a fair inference that there was any pooled education fund, the Court should disregard Plaintiffs' allegations related to such a fund. *See Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26 n.4 (D.D.C. 2014) ("Where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls

---

[9] The Court can consider both Interior's investigative report on boarding schools and the Kennedy Report because those reports are public records that are "attached to or incorporated in the complaint.'" *W. Org. of Res. Councils*, 124 F. Supp. 3d at 10 (citation omitted).

[10] As explained *supra* p. 8-9, until 1871, boarding schools largely were funded pursuant to treaty stipulations that expressly called for the federal government to provide services such as education. *See* Vol. II 52.

and the allegation is not accepted as true." (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (cleaned up)).

Plaintiffs therefore have failed to state a claim for either a comprehensive accounting of the federal Indian boarding school system, or for a narrower accounting of a hypothetical pooled education fund, under section 4011.[11]

### C.    Plaintiffs fail to state a claim under section 162a(d).

Plaintiffs also allege that they are entitled to an accounting of the federal Indian boarding school system under section 162a(d). Compl. ¶¶ 199–202. Section 162a(d) was enacted as part of the 1994 Act. But it does not create enforceable duties, let alone the accounting Plaintiffs seek.

Section 162a(d) enumerates certain "trust responsibilities," including "[p]roviding adequate systems for accounting," "preparing and supplying account holders with periodic statements of their account performance," and "establishing consistent, written policies and procedures for trust fund management and accounting." 25 U.S.C. §§ 162a(d)(1), (5), (6). The actions listed in 162a(d) are necessarily programmatic in nature, and therefore cannot be compelled. *See SUWA*, 542 U.S. at 63–64. Thus, section 162a(d) "does not 'establish a specific fiduciary duty,'" and its guidelines "are not actionable on their own." *Cherokee*, 754 F. Supp. 3d. at 134 (quoting *El Paso Nat. Gas Co.*, 750 F.3d at 895) (cleaned up); *see also Cobell VI*, 240

---

[11] While the complaint seeks an accounting of the Indian boarding school system, it also includes in a single paragraph a broad allegation that Interior has failed to provide "Native Nations with periodic, timely reconciliations to assure the accuracy of accounts." Compl. ¶ 200. But Plaintiffs have not pleaded facts to support the conclusory allegation that Interior has altogether failed to provide all tribes who are members of the putative class with periodic reconciliations in compliance with the 1994 Act sections 4011 and 162a(d)(3). Indeed, such an allegation could be easily disproven by voluminous public records demonstrating ongoing periodic statements of trust fund accounts. Moreover, to the extent Plaintiffs dispute the accuracy of their quarterly statements of performance, Interior has promulgated regulations establishing an appeals process for such disputes. *See generally* 25 C.F.R. §§ 2.800–2.825.

F.3d at 1105–06 (finding section 162a(d) likely does not create enforceable trust duties). And the Supreme Court has stated that section 162a(d) does not impose "the same common-law disclosure obligations as a private trustee." *Jicarilla*, 564 U.S. at 184.

Even setting that aside, section 162a(d) also does not require Interior to provide an accounting of the federal Indian boarding school system. Like the other provisions of the 1994 Act that Plaintiffs rely on, section 162a(d) does not address the boarding school system at all. And the complaint's allegations under section 162a(d) primarily involve the supposed "pooled" education fund that, as discussed above, Plaintiffs fail to plausibly allege. *See* Compl. ¶¶ 199–203. Plaintiffs' conclusory allegations related to that pooled fund and Interior's supposed failures to provide periodic statements of that fund are not supported by the factual allegations in the complaint or the underlying cited sources. Thus, even if section 162a(d) provided any enforceable trust duties (it does not), the complaint fails to state a claim under that section as well.

### III.    Plaintiffs fail to state an APA claim related to Interior's investigative report.

Plaintiffs also fail to state an APA claim against Interior's investigative report itself. The complaint cannot state a claim against the report under section 706(2) of the APA because the investigative report is not a challengeable final agency action. Plaintiffs also cannot state a failure-to-act claim under section 706(1) of the APA because no statute or regulation required Interior to prepare the report. Plaintiffs therefore cannot plausibly allege that Interior "failed to take a *discrete* agency action that it is *required to take.*" *SUWA*, 542 U.S. at 64.

A.    **Plaintiffs fail to state a claim under APA § 706(2) because the investigative report on the Indian boarding school system is not a final agency action.**

"The APA limits judicial review to 'final agency action for which there is no other adequate remedy in a court.'" *Rtskhiladze v. Mueller*, 784 F. Supp. 3d 256, 263 (D.D.C. 2025) (quoting 5 U.S.C. § 704)). Thus, to state a claim under the APA, a plaintiff must identify a "final agency action." *Karst Env't Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1297–98 (D.C. Cir. 2007). To be final under the APA, an action must "mark the 'consummation' of the agency's decisionmaking process" and "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177–78 (citations omitted).

Plaintiffs allege that Interior's investigative report on federal Indian boarding schools was a final agency action, and that Interior's decisions about what to include in the scope of that report were arbitrary and capricious. *See* Compl. ¶ 195 (alleging the scope and content of the investigative report is a final agency action); *id.* ¶ 197 (alleging content of report was arbitrary and capricious). But Plaintiffs cannot state an APA claim challenging the investigative report because it was not a final agency action.

"Agency investigative reports generally do not qualify as final agency action." *Rtskhiladze*, 784 F. Supp. 3d at 264. That is because legal consequences do not flow from an agency's factual reports. *Id.*; *see also Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11 (D.C. Cir. 2015) (National Transportation Safety Board accident investigation not final agency action).

Here, Interior's boarding school report was prepared at the request of the Secretary of the Interior, who directed Interior to "undertake an investigation of the loss of human life and lasting consequences of the Federal Indian boarding school system." Vol. I 3. No statute or regulation

required Interior to prepare the report. Instead, it was prepared to achieve and inform Interior's

own policy goals. One of those goals was to "assist in the effort to recover the histories of these

institutions." *Id.* The report itself is simply a description of the investigation Interior undertook,

and the facts unearthed by that investigation. The report provides recommendations, but

"imposes no obligations, prohibitions, or restrictions; it 'compels action by neither the recipient

nor the agency.'" *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536 (D.C. Cir. 2019) (citation

omitted). Nothing in the investigative report created new legal rights or obligations.

The D.C. Circuit has concluded that agency investigative reports are not final agency

actions. *See, e.g.*, *Joshi*, 791 F.3d at 11 (National Transportation Safety Board accident

investigation not final agency action); *Reliable Automatic Sprinkler Co. v. Consumer Prod.*

*Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (agency's investigation of sprinkler heads,

including statement of intent to make a preliminary finding that the sprinkler heads presented a

substantial product hazard, was not a final agency action). In *Joshi*, the National Transportation

Safety Board investigated an airplane crash and then released a report that "gave a brief

summary of the accident and concluded that it was likely the product of the pilot's actions during

the approach to landing." 791 F.3d at 10. The pilot's father challenged the report's finding, but

the D.C. Circuit rejected the suit on the ground that the report was not a reviewable final order

because "no legal consequences of any kind result[ed] from the [Board's] factual report or

probable cause determinations." *Id.* at 11.

The same is true here. Plaintiffs allege that Interior's "decision to omit" certain factual

inquiries from its report (such as "Treaty-stipulated support" and wealth allegedly generated by

Native children's labor) was "a final agency action within the meaning of the APA." Compl.

¶ 195. But no legal consequences flow from the factual findings in the report, much less from

Interior's decisions about the report's scope, and Plaintiffs do not plausibly allege otherwise. The investigative report is not a final agency action subject to review under the APA.

Furthermore, even if Plaintiffs could challenge the investigative report as a final agency action (they cannot), the remedy for any deficient investigative report would be a remand to Interior "for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). The remedy for an inadequate investigative report would not be the order Plaintiffs seek here, which would require Interior to conduct a specific accounting of the federal Indian boarding school system.

### B.     Plaintiffs fail to state a claim under APA § 706(1).

Plaintiffs appear to plead their APA claim primarily as a section 706(2) claim seeking to set aside the investigative report as arbitrary and capricious. *See* Compl. ¶¶ 194 (alleging failure to provide accounting was a final agency action); 195 (contending Interior's scoping decision was a final agency action); 197 (alleging Interior's decisions were arbitrary and capricious); 207 (same). But Count II also cites section 706(1), *id.* ¶ 191, and claims that Interior failed to act in accordance with various alleged trust duties. *See id.* ¶¶ 199–206. To the extent the complaint is construed as pleading a failure-to-act claim under APA section 706(1) related to Interior's investigative boarding school report, that claim should also be dismissed.

To state a claim under § 706(1), Plaintiffs must plausibly allege "that an agency failed to take a *discrete* agency action that it is *required to take.*" *SUWA*, 542 U.S. at 64. That the action must be "required" means it is limited to acts required by law; it does not apply to actions an agency willingly undertakes as a matter of policy or otherwise. *See id.* at 65 ("The limitation to

*required* agency action rules out judicial direction of even discrete agency action that is not demanded by law. . . .”).

Here, Plaintiffs have not identified any specific law that required Interior to prepare the investigative report on Indian boarding schools at all. As explained above, the statutory provisions of the 1994 Act that Plaintiffs identify do not discuss federal Indian boarding schools at all, much less task Interior with preparing an investigative report. *See supra* Section II. Instead, it is clear from the face of the report itself that Interior prepared it at the direction of the then-Secretary of the Interior. It was not prepared pursuant to any enforceable legal obligation. Plaintiffs therefore cannot challenge the investigative report—or seek to compel additional reporting—under APA § 706(1).

## CONCLUSION

The Court should dismiss Plaintiffs' complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have failed to identify any statute, treaty, or regulation that requires Interior to undertake the 150-year accounting of the federal Indian boarding school system they demand. The general trust relationship between the United States and Native Nations, standing alone, cannot sustain a cause of action for an accounting. And none of the treaty provisions on which Plaintiffs rely require the accounting of the boarding school system that Plaintiffs seek here.  The 1994 Act's accounting provisions address the management of tribal trust funds, not the federal Indian boarding school system, and the Act's plain terms do not reach the broad categories that Plaintiffs seek to have itemized. And Interior's investigative report on the boarding school system, which was prepared as a matter of policy rather than legal obligation, is not a final agency action subject to challenge under the APA. Because no source of law requires the accounting Plaintiffs demand, their complaint fails to state a claim upon which relief can be granted and should be dismissed.

Respectfully submitted this 20th day of February, 2026,

/s/ *Angela N. Ellis*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ANGELA N. ELLIS
SAMUEL R. VICE
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 598-7942 (Ellis)
(202) 353-5540 (Vice)
angela.ellis@usdoj.gov
samuel.vice@usdoj.gov